**STATE of Missouri, Respondent,**

v.

**Joseph J. DRAKE, Appellant.**

**WD 78996**

Missouri Court of Appeals,
Western District.

OPINION FILED: March 28, 2017

Damien De Loyola, Kansas City, MO, for Appellant.

Christine Lesicko, Jefferson City, MO, for Respondent.

Before Division Four: Mark D. Pfeiffer, Chief Judge Presiding, Thomas H. Newton, and Anthony Rex Gabbert, Judges

Thomas H. Newton, Judge

Mr. Joseph Drake appeals a judgment convicting him of two counts of first-degree statutory sodomy, § 566.062, one count of first-degree child molestation, § 566.067, and one count of enticement of a child, § 566.151.[1] The issues on appeal include claims of trial court error in overruling Mr. Drake's motions for acquittal on one count of child molestation and error in presenting jury instructions that do not instruct the jury that they must unanimously agree on a specific criminal incident to convict Mr. Drake on each charge. We affirm in part and reverse in part.

Mr. Drake appeals a judgment convicting him of two counts of first-degree statutory sodomy, one count of first-degree child molestation, and one count of enticement of a child. At trial, the following evidence was produced:

The victim's mother would leave her six-year-old daughter, the victim, at Mr. Drake's house for multiple weekends a month from June 2004 to September 2007. When the victim stayed at Mr. Drake's home, she slept with him in his bed in his room, which was in the attic of his mother's house. In 2005, Mr. Drake's friend moved in with Mr. Drake and his mother. That year, the friend living with Mr. Drake became suspicious that Mr. Drake was sexually abusing the victim although he never witnessed any improper touching. The friend confronted Mr. Drake about his suspicions and Mr. Drake explained that he was "checking her because he thought somebody in the neighborhood had done something wrong to her." The resident reported his concerns to the police; Mr. Drake, however, was not charged based on this report.

A few years later, Mr. Drake's neighbor came over to borrow a car jack, and Mr. Drake told him that he "checked [the victim] on a weekly basis, that he was able to—he said specifically, I can fit two fingers inside of her. I can slide my hand down her stomach and down between her legs and wake her up from a dead sleep."

---

1. Statutory references are to RSMo 2000, as updated by cumulative supplement 2006, unless otherwise indicated.

After the victim's ninth birthday, she told her mother about the touching, and her parents confronted Mr. Drake. Mr. Drake denied touching the victim during this confrontation. After the confrontation, the victim disclosed that she had been touched by Mr. Drake to a Children's Division investigator. During this interview, the victim stated that Mr. Drake began touching her under her clothes with his hands in her private area" and on her chest when she was six years old. She explained that this happened at night in his room and he would "never stop." She explained that Mr. Drake touched her every night she spent the night from the time she was six until she was nine. During the interview, the victim also stated that Mr. Drake showed her "bad magazines" with pictures of naked people touching one another. She also testified that Mr. Drake tried to touch her "bikini" with his "private" but was unsuccessful.

At the conclusion of trial, the jury was given identical instructions for counts one and two for first-degree statutory sodomy, as well as instructions for count three, child molestation, and count four for enticement of a child. Mr. Drake did not object to these instructions. The jury returned guilty verdicts on all counts. In October 2009, the trial court sentenced Mr. Drake to three concurrent fifteen-year sentences and a concurrent seven-year sentence. After a grant of habeas corpus, Mr. Drake was resentenced in September 2015 to allow him to timely file a direct appeal. This appeal follows.

## Legal Analysis

### Sufficiency of the Evidence

In the first point, Mr. Drake asserts that the trial court erred in overruling his motions for acquittal and entering a judgment of conviction on Count III, first-degree child molestation. He asserts that

first-degree child molestation requires the State to produce sufficient evidence to establish that Mr. Drake touched the victim with his genitals and that the State failed to do so.

When reviewing a challenge to the sufficiency of the evidence, our role is limited to determining whether sufficient evidence exists from which a reasonable trier of fact might have found the defendant guilty beyond a reasonable doubt. In making this determination, we view the evidence and all reasonable inferences in the light most favorable to the verdict and disregard all contrary evidence and inferences. We defer to the circuit court's decision as to the credibility and weight of the witnesses' testimony, and we recognize that the circuit court "may believe all, some or none of the testimony of a witness."

*State v. Warren,* 304 S.W.3d 796, 799–800 (Mo. App. W.D. 2010) (internal citations omitted). "The Court may 'not supply missing evidence, or give the [State] the benefit of unreasonable, speculative or forced inferences.' 'If the evidence is insufficient to sustain a conviction, plain error affecting substantial rights is involved from which manifest injustice must have resulted.'" *State v. Whalen,* 49 S.W.3d 181, 184 (Mo. banc) (internal citations omitted), *cert. denied,* 534 U.S. 1030, 122 S.Ct. 567, 151 L.Ed.2d 440 (2001).

Section 566.067.1 states that "[a] person commits the crime of child molestation in the first degree if he or she subjects another person who is less than fourteen years of age to sexual contact." Under section 566.010 (3), sexual contact is defined as, "any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, or such touching through the clothing, for the purpose of

arousing or gratifying sexual desire of any person." At trial, the jury was instructed as follows:

> As to Count III, if you find and believe from the evidence beyond a reasonable doubt:
>
> First, that between and including June 26, 2004, and September 23, 2007, in the County of Jackson, State of Missouri, the defendant touched [the victim] on her body with his genitals and
>
> Second, that he did so for the purpose of arousing or gratifying the sexual desire of any person, and
>
> Third, that [the victim] was then less than fourteen years old,
>
> then you will find the defendant guilty under Count III of Child Molestation in the First Degree under this instruction.
>
> However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

The jury heard testimony from Ms. Kristin Gilgour, the Child Protection Center Forensic Interviewer, who conducted the forensic interview in which the victim disclosed sexual abuse by Mr. Drake. During the course of her testimony, Mr. Gilgour explained the following:

> Q: (By Mr. Eason) Now, during—and you witnessed the playing of this interview, right?
>
> A: Yes.

Q: During that interview I noted that [the victim] was pointing out a spot on the diagram during your questioning to her about where she was touched by his penis?

A: Correct.

Q: Was there actually a mark that resulted from her pointing to the diagram?

A: No, there was not.

Q: And do you remember exactly where she was pointing?

A: I don't recall specifically. I believe it was between kind of the thighs and the top of the vaginal area.

Q: But it was definitely on her body?

A: Yes.

Q: And between her thighs and her vaginal area?

A: Yes.

 It is reasonable to believe that after hearing this testimony the jury inferred that Mr. Drake was guilty of touching the victim with his genitals because Ms. Gilgour was describing the interaction with the victim where this abuse was disclosed. When determining evidence sufficiency, we disregard all contrary evidence and inferences. *Warren*, 304 S.W.3d at 799–800. Therefore, we must disregard Mr. Drake's assertion that this testimony is ambiguous at best and that, in conjunction with the victim's denials, the jury could not reasonably convict him on Count III, first-degree child molestation.[2] *See*

---

**2.** Mr. Drake asserts that the evidence in this case was insufficient because during trial the victim denied that he ever touched her with his genitals. In addition, he argues that the victim's denials during the Child Protective Services interview show that insufficient evidence exists to uphold his guilt. During these denials, however, the victim's body language displays discomfort and shame. Furthermore, the jury also heard testimony from Ms. Gilgour explaining that discrepancies in child witness testimony occur because of how children

experience the disclosure process. She explains this by stating, "[s]o there's a variety of reasons why children don't tell initially. But, again, just part of that disclosure process, kids can move in and out of that process. You know, sometimes they tell and recant and then they reaffirm it. Sometimes they initially deny and then come back later and confirm t hat the allegations are true." Thus, the State also provided testimony to frame the victim's denials to the jury. Witness credibility and the weight afforded to witness testimony is the

*State v. Taylor*, 504 S.W.3d 116, 121–22 (Mo. App. E.D. 2016) ("First '[t]he testimony of a single witness is sufficient to support a conviction, even if that testimony is inconsistent [with other witnesses' testimony.].' Second '[t]he credibility and weight of testimony are for the fact-finder to determine.") (citations omitted). Accordingly, we find sufficient evidence in the record to uphold Mr. Drake's conviction on Count III. Point one is denied. ·

### Unanimous Jury

In the remaining points, Mr. Drake argues that the trial court erred because in a multiple-act case, jury instructions must specifically identify the facts of each charge and must include an instruction informing the jury that jurors must agree on a specific act to find Mr. Drake guilty. In the second point, Mr. Drake asserts that instructions 5 and 6 were identical and non-specific on first-degree statutory sodomy. In the third point, Mr. Drake asserts that instruction 7 was non-specific on first-degree child molestation. In the final point, Mr. Drake claims that instruction 8 was non-specific on enticement of a child. Mr. Drake asserts that all of these instructions were erroneous because the jury was given a nonspecific jury instruction and not instructed that jurors had to unanimously agree on a specific incident before convicting him.

 Mr. Drake asserts that each of these faults was a matter of plain error.

Under rule 30.20, plain error review involves a two-step process. First we determine whether or not the claimed error "facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." We must determine "whether,

on the face of the claim, plain error has, in fact, occurred." Errors are plain if they are evident, obvious, and clear. In the absence of such error, we should decline to exercise our discretion to review the claimed error under rule 30.20. If we find plain error on the face of the claim, we may proceed, at our discretion, to the second step and consider whether or not a miscarriage of justice or manifest injustice will occur if the error is left uncorrected."

*State v. Mullins*, 140 S.W.3d 64, 68 (Mo. App. W.D. 2004) (internal citations omitted).

 The Missouri Constitution guarantees the right to a unanimous jury verdict. *State v. Celis–Garcia*, 344 S.W.3d 150, 155 (Mo. banc 2011). A unanimous jury is one in which "the jurors [must] be in substantial agreement as to the defendant's acts, as a preliminary step to determining guilt." *Id.* The Missouri Supreme Court states that

a defendant's right to a unanimous verdict would be protected in a multiple acts case by either the State (1) electing the particular criminal act on which it will rely to support the charge or (2) the verdict director specifically describing the separate criminal acts presented to the jury and the jury being instructed that it must agree unanimously that at least one of those acts occurred.

*Id.* at 157.

A multiple acts case arises when there is evidence of multiple, distinct criminal acts, each of which could serve as the basis for a criminal charge, but the defendant is charged with those acts in a single count. To determine if a case is a multiple acts case, courts consider the

responsibility of the jury as the fact-finder. *State v. Gannaway*, 497 S.W.3d 819, 824–25 (Mo. App. S.D. 2016). Therefore, it is not for

this Court to reweigh the evidence simply to compare inconsistent testimony.

following factors: "(1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct.

*Celis–Garcia*, 334 S.W.3d at 155–56 (citations omitted).

## Point Two

Here, the trial court submitted Instructions No. 5 and 6 which state: Instruction No. 5

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that between and including June 26, 2004, and September 23, 2007, in the County of Jackson, State of Missouri, the defendant knowingly touched the genitals of [the victim] with his hand, and

Second, that such conduct constituted deviate sexual intercourse, and

Third, that at that time [the victim] was a child less than twelve years old, then you will find the defendant guilty under Count I of Statutory Sodomy in the First Degree under this instruction.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

As used in this instruction, the term "deviate sexual intercourse" means any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person.

As used in this instruction, "knowingly" means a person knew, or acts knowingly, or with knowledge,

(a) with respect to his or her conduct or to attendant circumstances when the person is aware of the nature of his or her conduct or that those circumstances exist, or

(b) with respect to a result of a person's conduct when he or she is aware that his or her conduct is practically certain to cause that result.

Instruction No. 6

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

First, that between and including June 26, 2004, and September 23, 2007, in the County of Jackson, State of Missouri, the defendant knowingly touched the genitals of [the victim] with his hand, and

Second, that such conduct constituted deviate sexual intercourse, and

Third, that at that time [the victim] was a child less than twelve years old,

then you will find the defendant guilty under Count II of Statutory Sodomy in the First Degree under this instruction.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

As used in this instruction, the term "deviate sexual intercourse" means any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for

the purpose of arousing or gratifying the sexual desire of any person.

As used in this instruction, "knowingly" means a person knew, or acts knowingly, or with knowledge,

(a) with respect to his or her conduct or to attendant circumstances when the person is aware of the nature of his or her conduct or that those circumstances exist, or

(b) with respect to a result of a person's conduct when he or she is aware that his or her conduct is practically certain to cause that result.

■ Each jury instruction is identical, with the only distinction being reference to Count I or II. The instructions fail to either identify a specific criminal act to support the charge or to describe the separate criminal acts presented and instruct the jury that jurors must agree unanimously that at least one of those acts occurred. *See Celis–Garcia*, 344 S.W.3d at 157. At trial, the State explained that the reason there are two counts of Statutory Sodomy is "[b]ecause she's told you it happened multiple times and it happened more than once, more than she can count." Accordingly, this is a multiple-act case in which the jury should have been instructed with specific jury instructions.

Although the evidence presented did not provide explicit dates for each incident of sodomy, the State was not prevented from including details in the jury instructions to identify which specific incident it was charging. For example, the State could have identified the incidents by location [3] or by time.[4] Because the jury instruction fails to specifically identify the crime relied on to support each charge, it is clear that plain error has, in fact, occurred. *See Hoeber v. State*, 488 S.W.3d 648, 654–55 (Mo. banc 2016) ("Despite the conflicting evidence presented at trial of multiple acts of hand-to-genital contact, neither verdict director specified a particular room or incident. Instead, two counts of statutory sodomy were submitted to the jury.... Because the verdict directors failed to identify any specific incident or room in which the conduct occurred, the verdict directors allowed each individual juror to determine which incident he or she would consider in finding [the Defendant] guilty on each count of statutory sodomy....The verdict directors, therefore, created a real risk that the jurors did not unanimously agree on the specific acts of statutory sodomy for which they found [the Defendant] guilty. Accordingly, the verdict directors failed to ensure a unanimous jury verdict.").

■ "For instructional error to constitute plain error, the defendant must demonstrate the trial court 'so misdirected or failed to instruct the jury' that the error affected the jury's verdict." *Celis–Garcia*, 344 S.W.3d at 154 (citation omitted). "[T]o comply with the constitutional mandate

---

3. The Child Protective Services interview reveals that Mr. Drake touched the victim both in his attic bedroom and in the living room. During the interview, the victim testifies that Mr. Drake "touched me and would never let me go to sleep at night" and shows that he touched her "bikini" and "bootious maximus" with his hand on a diagram provided by the interviewer. She also explains that in the living room "he would keep touching the same parts where he does it up in his room" with his hand. She explains that the touching happened once in the living room when she was seven years old.

4. The interview also distinguishes the incidents by the victim's age. The victim states that the first incident occurred when she was six years old and the last incident happened while she was nine years old. During her testimony she explains the sole living room occurrence happened when she was seven years old.

that the jury reach a unanimous verdict, the verdict director not only must describe the separate criminal acts with specificity, but the court must also instruct the jury to agree unanimously on at least one of the specific criminal acts described in the verdict director." *Id.* at 158. Because the provided instructions were not specific and the jury was not told to unanimously agree on at least one specific act, it is clear that the verdict directors misdirected the jury in a way that affected the verdict. Therefore, because Mr. Drake was not granted the constitutional protection of a unanimous jury, a miscarriage of justice has occurred. Accordingly, Mr. Drake's convictions for two counts of first-degree statutory sodomy are reversed, and he is entitled to a new trial on those charges. *See Celis-Garcia*, 344 S.W.3d at 159. Point two is granted.

### Point Three

In the present case, the trial court submitted Instruction No. 7 which states:

First, that between and including June 26, 2004, and September 23, 2007, in the County of Jackson, State of Missouri, the defendant touched [the victim] on her body with his genitals and

Second, that he did so for the purpose of arousing or gratifying the sexual desire of any person, and

Third, that [the victim] was then less than fourteen years old,

then you will find the defendant guilty under Count III of Child Molestation in the First Degree under this instruction.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

As previously stated, the allegations involve sexual touching of the victim with both Mr. Drake's hand and his penis.

While the victim's interview, as detailed previously, provides a general description of her encounters with Mr. Drake, she provides a description of only one incident of attempted genital contact in the interview with Ms. Gilgour. Therefore, because of the specific language in this instruction requiring that the jury find "the defendant touched [the victim] on her body *with his genitals*" there is only one identifiable act that can be evaluated in relation to this instruction. Because the language of the jury instruction is not so broad as to include physical contact other than with Mr. Drake's genitals, it is unreasonable to conclude that the jurors were not in substantial agreement as to Mr. Drake's alleged act of child molestation. Therefore, the verdict director did not require additional specificity to insure jury unanimity. *See State v. Edwards*, 365 S.W.3d 240, 247 (Mo. App. W.D. 2012). Point three is denied.

### Point Four

Finally, the trial court submitted instruction No. 8 to the jury, which states:

As to Count IV, if you find and believe from the evidence beyond a reasonable doubt:

First, that between and including June 26, 2004, and June 4, 2006, in the County of Jackson, State of Missouri, the defendant enticed or lured [the victim] by showing her pornographic photographs and/or discussing sexuality with her, and

Second, that the defendant did so for the purpose of engaging in sexual conduct with [the victim], and,

Third, that at that time [the victim] was a child less than fifteen years of age, and,

Fourth, it was the defendant's purpose to have sexual conduct with a person less than fifteen years of age, and,

Fifth, that the defendant was twenty-one years of age or older,

then you will find the defendant guilty under Count IV of Enticement of a Child under this instruction.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

As used in this instruction, "sexual conduct" means sexual intercourse, deviate and sexual intercourse of sexual contact.

As used in this instruction, the term "sexual intercourse" means any penetration, however slight, of the female sex organ by the male sex organ, whether or not an emission results.

As used in this instruction, the term "deviate sexual intercourse" means any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person.

As used in this instruction, "sexual contact" means any touching of another person with the genitals or anus of another person, or the breast of a female person, or such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person.

 To establish a multiple acts case, there must be evidence of multiple, distinct criminal acts, which could each serve as the basis for the criminal charge. *Celis–Garcia,* 344 S.W.3d at 155–56. During the victim's interview with Child Protective Services, she stated that Mr. Drake

showed her "bad magazines" before he touched her. The record provides no indication that this occurred every time Mr. Drake touched the victim or if it was a single occasion. Because there is no evidence of multiple distinct criminal acts, it is reasonable that the jury's conviction of Mr. Drake showing the victim these magazines was unanimous and specific. Point four is denied.

## Conclusion

Because the record includes sufficient evidence to uphold a conviction of first-degree child molestation (count III), we deny Mr. Drake's first point. Further, this court finds no plain error associated with jury instructions No. 7 and No. 8 (counts III & IV respectively). We, therefore, affirm the trial court's use of these instructions.

Conversely, because of the omission of a specific criminal act to support the charge or a verdict director describing the separate criminal acts and instructing the jury that it must agree unanimously on the occurrence of at least one of those acts, we find that the use of instructions No. 5 and 6 constitute plain error. Therefore, Mr. Drake's conviction for Counts I and II, first-degree statutory sodomy, should be reversed, and he is entitled to a new trial on these charges. In all other respects, the trial court's judgment is affirmed.

Mark D. Pfeiffer, C.J., and Anthony Rex Gabbert, J. concur.